DOLGIN, APPELLEE, *v.* DOLGIN, APPELLANT.

[Cite as Dolgin v. Dolgin, 1 Ohio App. 2d 430.]

(No. 5894—Decided January 11, 1965.)

*Mr. Marvyn R. Lachin,* for appellee.
*Mr. Harry R. Illman,* for appellant.

SMITH, J. This is an appeal from an order of the Juvenile Court of Lucas County, dated January 27, 1964, wherein the court found "that the best interest of the children—especially the daughter—requires that the recommendations of the court counselor as distinguished from the referee, be accepted and be, and the same hereby are approved, adopted and made the orders of this court."

On September 11, 1964, the court overruled motions of defendant, appellant herein, dated February 18 and February 20, 1964, requesting, among other things, a new trial, and the notice of appeal to this court was filed on September 17, 1964. The recommendations of the court counselor, accepted and approved in that order by the court, read in part as follows:

"After a thorough and complete investigation and report thereof, it is the opinion of the investigating counselor that because of the psychological problems now existing with the children as a result of the timing and treatment of the entire problem, that the children continue to use the name of Silverblatt for the present; further, that all the parties including the children, be referred to Jewish Family Service for casework effort to resolve the conflict so the best interests of the children may be preserved."

In the counselor's report conceded in the brief of counsel there further appears the following:

"During the fall of 1962 Mrs. Silverblatt did arrange for the Washington Township Board of Education and the Collingwood Avenue Temple to have the names of the children, Denise and Bradford, changed from Dolgin to Silverblatt. * * *

"Because of the sensitivities of Denise they agreed to use the Silverblatt name without consulting Mr. Dolgin whom they were unable to locate. When Mr. Dolgin was finally consulted

the children and the Silverblatts maintain Mr. Dolgin did consent to the use of the Silverblatt name, but several weeks later changed his mind. Mr. Dolgin denies this ever transpired. During a good portion of this period Mr. Dolgin did live in Dayton, Ohio; he moved back to Toledo in May, 1963. Since moving back to Toledo he has been having the children for companionship almost each Sunday afternoon.''

The undisputed facts in the record of the hearing before the referee show that Shirley Dolgin, plaintiff, appellee herein, obtained a decree of divorce from defendant, Norman Dolgin, wherein custody of the minor children of the parties, namely, Denise Dolgin and Bradford Dolgin, was awarded to her with right of reasonable visitation by the father, Norman Dolgin; that subsequent to the divorce decree the mother married Jerry Silverblatt; that, thereafter, without permission of Norman Dolgin, the natural father, or of the court, the mother, in the fall of 1962, directed the Washington Township Board of Education and the Collingwood Avenue Temple to substitute the name, Silverblatt, for the surname of the children, Dolgin, on the school enrollment and Temple records; and that the father continued the support of the children as ordered in the divorce decree.

The defendant makes the following assignments of error:

1. The trial court erred in refusing to make or accept the orders and recommendations of its referee as orders of such court.

2. The trial court erred in overruling defendant's motion for a new trial.

3. The trial court erred in refusing to separately state its findings of fact and conclusions of law, although duly requested by defendant.

4. The judgment of the trial court is not sustained by sufficient evidence, is manifestly against the weight of the evidence and is contrary to law.

The question before this court is whether a mother, having been awarded the custody of two minor children upon obtaining a divorce decree from the natural father and thereafter remarrying, can, upon her own volition, arrange for and permit the use of the stepfather's name instead of the use of the surname of the natural father, notwithstanding his objection and

his obeyance of the order of the divorce court in the payment of support for his children and in maintaining a parental interest in the children.

Upon the entry of the decree of divorce, the cause, on February 6, 1959, was certified under the statute from the Common Pleas Court of Lucas County, Division of Domestic Relations, to the Juvenile Court of Lucas County, with continuing jurisdiction over the minor children. On December 21, 1962, defendant filed a motion reciting that the mother has remarried and has directed the children's names to be changed by the Board of Education of Washington Township, Lucas County, and the Collingwood Avenue Temple, constituting a *de facto* adoption and a violation of the terms of the order of custody, and praying for an order of the court to terminate its order of support until such time as the plaintiff restores the children's names with the board of education and Collingwood Temple to their proper surname, or in lieu thereof that the action of the plaintiff be decreed to be a *de facto* adoption and the defendant relieved of any further payments until such time as the use of the children's names is adjudicated and restored. On February 13, 1963, defendant filed a supplemental motion seeking an order for Washington Township School and Collingwood Temple to correct their records of the names of the children to Denise Dolgin and Bradford Dolgin. Washington Township School and Collingwood Avenue Temple were not made parties to this action.

On February 4, 1963, the court referred the case to its duly constituted referee, Harry A. Everett, for hearing, and on February 21, 1963, the referee found that the motion of defendant to suspend child support and show cause as to the use of the name of the stepfather was not well taken and should be dismissed and the matter, at the request of plaintiff, referred to to a counselor for investigation as to the change of name.

On November 15, 1963, plaintiff filed a motion to make the report of the investigating counselor the order of the court. On December 19, 1963, the referee filed his findings of fact and recommendations which in part read as follows:

"However, in the light of the precedence set in the cases cited by counsel and defendant's continuous support and interest in the children, the conclusion must be reached that defend-

ant is entitled to the relief as prayed for in his supplemental motion, and that the plaintiff be, and hereby is, ordered to restore the school and church registration of the children under their proper parental name of Denise Dolgin and Bradford Dolgin.''

The Juvenile Court is authorized by Section 2151.16, Revised Code, to appoint a referee in the case. Such section provides:

''The Juvenile Judge may appoint and fix the compensation of referees who shall have the usual power of masters in chancery cases, provided, in all such cases submitted to them by the Juvenile Court, they shall hear the testimony of witnesses and certify to the judge their findings upon the case submitted to them, together with their recommendation as to the judgment or order to be made in the case in question. The court, after notice to the parties in the case of the presentation of such findings and recommendation, may make the order recommended by the referee, or any other order in the judgment of the court required by the findings of the referee, or may hear additional testimony, or may set aside said findings and hear the case anew. In appointing a referee for the trial of females, a female referee shall be appointed where possible.''

We do not find any like provisions in the statutes with reference to an investigating counselor. The proceeding of the referee under the statute was a hearing legally had with witnesses and the right of cross-examination. The action and report of the counselor was a purely *ex parte* matter. While the court may make the order recommended by the referee or any other order in the judgment of the court required by the findings of the referee, or may hear ''additional testimony,'' it cannot be said that the report of the counselor constitutes a hearing of such additional testimony.

The special problems confronted by a Juvenile Court and the Common Pleas Court, Division of Domestic Relations (In this case grouped together in one building enlarged into an indigenous bureau known as ''Family Court Center.'' See Section 2301.03 (D), Revised Code, effective October 14, 1963.), must be governed and guided by law and not by the psychosociological concepts of a social worker, recently denominated by the euphemistic title of ''behavioral scientist.'' His training and

experience, while necessary in the burgeoning complex of juvenile and domestic relations, must be utilized within the scope of our legal system by uniform application of judicial pronouncements and statutory policy in the orderly legal process of the evolution of the law in this field.

In the case before us the illegal misuse of the parental surname of the children cannot be left to the dictate of a divorced mother who has remarried. Such conduct cannot be sanctioned by the court under the glittering generality of "best interests of the child." Indeed, the best interests of the child are served when established law is followed, otherwise the child's welfare is left to the devious and unbridled edicts of a court attache. Furthermore, such situation gives rise to ambivalence in consideration by the court whereby the psychosociological aspect may tend to transcend the established domain of jurisprudence. The law of domestic relations may be justly tempered, but not supplanted or negated, by whatever may be gleaned in logic and reason from psychology, not yet attaining full maturity, and sociology if not befuddled by concepts contrary to the norm of human nature. A court should not be dazzled by their verbal gymnastics, a vernacular unsuitable to clear enunciation of principles of the law.

A prior decision of this court supporting what we have here said, consonant with our position in general, appears in *Logan* v. *Logan,* 111 Ohio App. 534, which holds that a father may not be relieved of his obligation to support his minor children as a result of their so-called "*de facto,*" as distinguished from a *de jure,* adoption by their mother and stepfather.

The findings and recommendation of the referee were in accordance with the law. The case of *Kay* v. *Bell,* 95 Ohio App. 520, governs the decision in the case at bar. The syllabus is as follows:

"1. The natural father of a minor furnishes the surname of such minor, and the mother has no legal right to select a different surname when enrolling the minor in school.

"2. Where the school authorities enroll a child under an improper name selected by the mother of the minor and refuse to change that name on the records of the school to the surname of the father, a mandatory injunction action will lie to compel the school authorities to enroll the child under his proper surname."

In the case of *Bilenkin* v. *Bilenkin,* 78 Ohio App. 481, decided in 1945, it was held that a divorced husband cannot be relieved of the order of child support on the ground that the wife had changed the surname of the child and had violated an order requiring her to deliver the child to the husband. It was also held that in such case the divorced wife may not change the surname of the child by registering him in schools and other places under a different surname. We are in accord with such holding, but reject the further holding and reasoning therein that where such practice has been carried on from the time the wife, the child and the second husband moved to a residence hundreds of miles from that of the divorced husband, and it does not reasonably appear that he will be materially affected by such change of name, the failure of the court to restrain such practice is not prejudicial.

Furthermore, in a recent statute of Ohio pertaining to change of a minor's name, we find the legislative policy and procedure for implementing that policy in Section 2717.01, Revised Code, as amended and effective September 24, 1963. The original section provided the procedure to be followed by a person desiring to change his name by filing a petition in the Probate Court reciting the cause for which the change of name is sought and the new name asked for and the publication of the notice of the intended application. The amendment added a pertinent paragraph to this section, which reads as follows:

"When such application is made by or on behalf of a minor under the age of twenty-one years, the consent of both living, legal parents of said minor shall be filed or the matter shall be set for hearing on a day certain, and any such parent not consenting shall be given notice of the hearing upon such application in the manner provided by Section 2101.26 of the Revised Code."

It appears, therefore, that while a Juvenile Court has continuing jurisdiction over the minor children, such jurisdiction does not include the change of the name of a minor, which has been lodged in the Probate Court under such statute. The jurisdiction of the Juvenile Court in this case encompasses the authority of the court by order to regulate the illegal conduct of the parent, having custody, in relation to minor children.

Therefore, the first assignment of error that the trial court

erred in refusing to make or accept the orders and recommendations of the referee is well taken. What has been said makes it unnecessary to pass upon the other errors assigned.

The judgment of the Juvenile Court approving the change of the surname of the minor children is reversed and the cause is remanded to that court with instructions to enter judgment which should have been entered by that court in favor of the defendant, Norman M. Dolgin, and that the plaintiff, Shirley Silverblatt, formerly Shirley Dolgin, be ordered to restore the school and Temple registration of the children to their proper parental surname of Denise Dolgin and Bradford Dolgin.

*Judgment reversed.*

DEEDS and FESS, JJ., concur.