## In re CHANGE OF NAME OF BARKER et al.

[Cite as *In re Change of Name of Barker*, 155 Ohio App.3d 673, 2003-Ohio-7016.]

Court of Appeals of Ohio,
Twelfth District, Warren County.

Nos. CA2003–05–056, CA2003–05–057 and CA2003–05–058.

Decided Dec. 22, 2003.

Thomas G. Eagle Co., L.P.A., and Thomas G. Eagle, for petitioner-appellant Wendy Gramza.

Ruppert, Bronson, Ruppert & D'Amico Co., L.P.A., and Joshua G. Burns, for respondent-appellee Gregory Barker.

POWELL, Judge.

{¶ 1} Petitioner-appellant, Wendy Gramza, appeals from the judgment of the Warren County Court of Common Pleas denying a name change for her three children. We affirm the judgment of the trial court.

{¶ 2} Wendy and her first husband, appellee, Gregory Barker, were divorced in 1997. Wendy maintained custody of the three Barker children and was named the residential parent of Zachary, Jessica, and Nicholas.

{¶ 3} Thereafter, Wendy married her current spouse, Jeff Gramza. Wendy and Gramza have children of their own as a result of that marriage. On January 10, 2003, Wendy applied to change Zachary's, Jessica's, and Nicholas' surname to Gramza so all of her children would have the same surname.

{¶ 4} A hearing was held and, based upon the testimony, the trial court denied Wendy's application to change Zachary's, Jessica's, and Nicholas' surname to Gramza on April 23, 2003. Wendy appeals the decision raising a single assignment of error:

{¶ 5} "The trial court erred in denying the petition for name change."

{¶ 6} Wendy argues that "the trial court abuses its discretion in denying a residential parent's petition to change a name of minor children to her name, where the evidence shows the change would not negatively affect the child's relationship with either parent other than by speculation." Wendy maintains that "the children have identified with a family unit with the proposed new name, the child[ren] had actually begun to use the new surname, and that the child[ren], of sufficient maturity, [have] expressed a preference for the name change." Wendy contends that "the change would be consistent with that of the child[ren]'s residential parent and that there has been embarrassment, discomfort, or inconvenience as a result of the different name from that of the residential parent, which would be avoided by the name change." Wendy contends that the nonresidential parent has demonstrated "a lack of or reduced maintenance of contact and support for the child[ren]." Therefore, Wendy argues that "it is in the child's best interest to have the name change."

{¶ 7} R.C. 2717.01 regulates proceedings to change a person's name. R.C. 2717.01(B), which governs name changes for minors, provides that "[a]n application for change of name may be made on behalf of a minor by either of the minor's parents, a legal guardian, or a guardian ad litem. When application is made on behalf of a minor, in addition to the notice and proof required pursuant to division (A) of this section, the consent of both living, legal parents of the minor shall be filed, or notice of the hearing shall be given to the parent or parents not consenting." Id. Therefore, pursuant to R.C. 2717.01(B), appellant, as the children's mother, had the right to request the name change, and it is uncontested that their father received notice of the hearing.

{¶ 8} The standard for deciding whether to permit a name change is "proof that * * * the facts set forth in the application show reasonable and proper cause for changing the name of the applicant." R.C. 2717.01(A); *In re Willhite* (1999), 85 Ohio St.3d 28, 30, 706 N.E.2d 778. This determination must consider the best interest of the child. Id. at 32, 706 N.E.2d 778. We will reverse a probate court's determination of whether a proposed name change is in a child's best interest only if it constitutes an abuse of discretion. *In re Crisafi* (1995), 104 Ohio App.3d 577, 581, 662 N.E.2d 887. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 9} In order to determine whether reasonable and proper cause has been established, a court must consider the best interest of the child. *Willhite*, 85 Ohio St.3d at 32, 706 N.E.2d 778. In determining the best interest of the

child, the trial court should consider the following factors: the effect of the change on the preservation and development of the child's relationship with each parent; the identification of the child as part of a family unit; the length of time that the child has been using a surname; the preference of the child if the child is of sufficient maturity to express a meaningful preference; whether the child's surname is different from the surname of the child's residential parent; the embarrassment, discomfort, or inconvenience that may result when a child bears a surname different from the residential parent's; parental failure to maintain contact with and support of the child; and any other factor relevant to the child's best interest. Id.; *Bobo v. Jewell* (1988), 38 Ohio St.3d 330, 528 N.E.2d 180, paragraph two of the syllabus.

{¶ 10} During the hearing, the trial court heard testimony from Wendy, Zachary, and Barker. Zachary testified that he was embarrassed at school because his last name was different from his mother's. Furthermore, Zachary testified that he was excited about having his surname changed. Wendy testified that changing the children's surname would save the children from "confusion, discomfort and embarrassment" at school, the doctor's office, and at church. Barker testified that he is involved in his children's lives and changing their surnames would undermine his role as a father.

{¶ 11} In reaching a final judgment, the trial court applied the factors of *Willhite*. The trial court found that although the children are close to their mother, to change their name would further disassociate them from their father. In addition, the trial court stated that although the children identify themselves as part of mother and stepfather's family unit, they "have been known as Barker their whole lives." The trial court stated that "a change from Barker's surname will, at a minimum, not foster their relationship with Barker and may undermine that relationship, Barker's support of the children, and Barker's regular contact with the children."

{¶ 12} The oldest child, Zachary, expressed a preference for the name change. Nevertheless, the trial court found that the reasons stated by all for a change are simply convenience and comfort. The trial court noted that "divorce is common in our society." The court found that "the children are subject to some confusion, embarrassment and inconvenience due to having a surname different from their residential parent"; however, this "is an unfortunate fact of modern society," and the "inconvenience should not be so great as to be intolerable." Further, the court noted that Barker "is neither notorious nor infamous." Therefore, there is no indication that Barker has so sullied his name that to be associated with him would cause the children great embarrassment or discomfort. Last, the trial court found that a change in surname "in conjunction with the fact that the

Children reside with Mr. Gramza and refer to him as 'dad' is too much disassociation of the Children with their biological father."

{¶ 13} Given the testimony and the trial court's application of the facts to the *Willhite* factors, we find the judgment was not unreasonable, arbitrary, or unconscionable. The sole assignment of error is overruled.

Judgment affirmed.

VALEN, P.J., and WILLIAM W. YOUNG, J., concur.